UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NORTHERN DIVISION

|  |  |  |
|---|---|---|
| **RAFAEL AVILES-CERVANTES** <br> Jesus Romero No. 8 <br> Ecuandureo, Michoacán, Mexico  C.P. 59730, <br><br> **PABLO GONZALEZ-AVILES** <br> 6626 Hartford Drive <br> Memphis, Tennessee  38134, <br><br> **HELEODORO PEÑA-GONZALEZ** <br> 33 Sullivan Avenue, Apartment B-1 <br> Westminster, Maryland  21557 <br> Carroll County <br><br> **and** <br><br> **JOSE ALBERTO RAMIREZ-BERNARDINO** <br> Nicolas Bravo No. 14-B <br> Ecuandureo, Michoacán, Mexico  C.P. 59730, <br><br> **individually and on behalf of all other persons similarly situated,** <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **OUTSIDE UNLIMITED, INC.** <br> 4195 St. Paul Road <br> Hampstead, Maryland  21074, <br><br> **Defendant.** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Civil Action No. 1:16-cv-1214-RDB <br> Class Action |

## SECOND AMENDED COMPLAINT FOR DAMAGES

## PRELIMINARY STATEMENT

1.     This is an action by four Mexican visa workers on behalf of themselves and other foreign and U.S landscape workers employed by Defendant OUTSIDE UNLIMITED, INC. during 2013 through 2015.  Plaintiffs seek damages on behalf of themselves and a class of similarly employed workers for Defendant's violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, the Maryland Wage and Hour Law, Md. Code, Labor & Employment Art. § 3-401, *et seq.*; the Maryland Wage Payment and Collection Law, Md. Code, Labor & Employment Art. § 3-501, *et seq.*, and for breach of its employment contracts with its landscape workers.

## JURISDICTION

2.     This Court has jurisdiction over this case pursuant to 28 U.S.C. §§1331 and 1337 as this action arises under the laws of the United States and Acts of Congress regulating commerce, and pursuant to 29 U.S.C. § 216, this action arising under the Fair Labor Standards Act.

3.     This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. §1367, because these state law claims are so related to the federal claims that they form part of the same case and controversy.

## VENUE

4.      Venue is proper in this district pursuant to 28 U.S.C. §§1391(b) and (c).  Defendant Outside Limited, Inc. is subject to this Court's personal jurisdiction with respect to this action.  A substantial part of the events giving rise to the Plaintiffs' claims occurred in this district.

## PARTIES

5.      Plaintiffs are citizens of the Republic of Mexico.

6.      Defendant Outside Unlimited, Inc. is a corporation organized under the laws of the Commonwealth of Pennsylvania.  At all times relevant to this action, Defendant Outside Unlimited, Inc. transacted business in the state of Maryland.  Outside Unlimited, Inc. has annual sales or revenue of more than $500,000.  Defendant Outside Unlimited, Inc. was Plaintiffs' "employer" within the meaning of Md. Code, Labor & Employment Art. § 3-401 and § 3-501 and 29 U.S.C. § 203(d).

## CLASS ACTION ALLEGATIONS

7.      Plaintiffs bring their ~~breach of contract action~~<u>state law claims</u> on behalf of a Rule 23(b)(3) class ~~(Contract Class)~~ defined as:

>   All H-2B temporary guestworkers hired by Defendant to fill jobs
>   described in Defendant's 2013, 2014 or 2015 ETA Form 9142 labor
>   certification applications.

8.      Plaintiffs bring their ~~Maryland Minimum Wage and Hour Law and the Maryland Wage Payment and Collection Law claims on behalf of a Rule 23(b)(3) class consisting of all H-2B guestworkers employed by Defendant in Maryland during 2013, 2014 and/or 2015 ("Statutory Claim Sub-Class").~~

~~9.~~     ~~Plaintiffs bring their~~ FLSA claims on behalf of members of the ~~Statutory Claim Class~~ above defined class who file consents to join in this action.

~~10~~9.     On information and belief, Plaintiffs' ~~Contract~~ Class consists of more than 200 individuals ~~and the Statutory Claim Sub-Class consists of more than 80 individuals,~~ making joinder of the class members impracticable.  Many of the members of the proposed ~~Contract Class and Statutory Claim Sub-~~Class are indigent guest workers who are not fluent in the English language, and who maintain their permanent homes outside the United States.  The relatively small size of the individual claims and the indigency of the class members make the maintenance of separate actions by each class member economically infeasible.  Joinder of all members of the class~~es~~ is impracticable.

~~11~~10.   There are questions of fact and law common to the members of the class~~es~~ including:

     a.     whether the terms and conditions of work set forth in the ETA Forms 9142 are incorporated in the work contracts of the class members;

     b.     whether Defendant was obligated to pay the class members additional moneys for work performed in 2013 pursuant to supplemental prevailing wage rated determined by the United States Department of Labor;

     c.     whether the ~~expenses spent washing~~deductions for uniforms ~~constitutes a *de facto* deduction from~~were primarily for the benefit of the employer and therefore had the effect of reducing the wages actually paid to Plaintiffs and other class ~~members' wages;~~members;

     d.     whether the transportation and lodging costs incurred by Plaintiffs and class members getting to and from ~~the workers'~~their homes ~~and~~to Defendant's job site in Maryland ~~loading site~~or Pennsylvania were for the primary benefit of Defendant and constituted *de facto* deductions from wages;

  e. whether the charges assessed the class members for housing facilities furnished by Defendant were ~~reasonable or included a profit for the employer or an associated person;~~<u>unreasonable and therefore had the effect of reducing the wages of Plaintiffs and other class members below the amount due them under their employment contracts and the applicable prevailing wage;</u>

  f. whether the ~~deductions~~<u>wage payments</u> made by Defendant from the class members' wages were lawful under the Maryland Wage Payment and Collection Law; ~~and~~

  g. <u>whether the class members were credited with and paid wages for all compensable hours worked in each workweek; and</u>

  h. whether the visa application fee charged to H-2B workers <u>to obtain visas for employment with Defendant</u> was for the primary benefit of Defendant and constituted a *de facto* deduction from wages.

~~12~~<u>11</u>. The claims of Plaintiffs are typical of the claims of the other members of the class~~es~~ and these typical, common claims predominate over any questions affecting only individual class members. Plaintiffs have the same interests as do other members of the classes and will vigorously prosecute these interests on behalf of the class~~es~~.

~~13~~<u>12</u>. Plaintiffs are adequate representatives of the class because there are no conflicts between Plaintiffs and the member of the classes and their attorneys are experienced in class action litigation, including class actions involving the H-2B guestworker program.

~~14~~<u>13</u>. The questions of law and fact common to the class predominate over any questions affecting only individual members and class treatment is superior to other available methods for fairly and efficiently adjudicating the controversy, because, *inter alia*:

a. The common issues of law and fact, as well as the relatively small size of the individual class members' claims, substantially diminish the interest of members of the classes in individually controlling the prosecution of separate actions;

b. Many members of the class~~es~~ are unaware of their rights to prosecute these claims and lack the means and resources to secure legal assistance;

c. There has been no litigation already commenced by the members of the class ~~es~~ to determine the questions presented with respect to Defendant;

d. It is desirable that the claims be heard in this forum because Defendant regularly conducts business in this district and the cause of action arose in part in this district; and

e. A class action can be managed without undue difficulty because Defendant regularly committed the violations complained of herein, and was required to maintain detailed records concerning each member of the class~~es~~.

**FACTUAL ALLEGATIONS**

~~15~~14. Since at least 2012, Defendant Outside Unlimited, Inc. has been engaged in the business of providing landscaping services to customers in Maryland and Pennsylvania.

~~16~~15. In each of the years from 2013 through 2015 ("years at issue"), Outside Unlimited, Inc. employed approximately 60 to 70 landscape laborers to carry out its business in Maryland and Pennsylvania.

~~17~~16. The Immigration and Nationality Act permits a non-agricultural employer who anticipates a temporary or seasonal labor shortage to import alien workers to perform unskilled labor of

- 6 -

a seasonal or temporary basis. 8 U.S.C. §1101(a)(15)(H)(ii)(B). Aliens admitted in this fashion are commonly referred to as "H-2B workers."

~~18~~17.  In order to find sufficient workers to fill its landscaping jobs, Defendant petitioned the Department of Homeland Security (DHS) <u>during</u> each ~~year~~<u>of the years at issue</u> for permission to import foreign workers to perform landscape work using H-2B temporary work visas.  In 2013, Outside Unlimited, Inc. petitioned for admission of 57 H-2B workers for employment in Maryland~~. In 2014~~, <u>and 17 for employment in Pennsylvania.</u>  Outside Unlimited, Inc. petitioned for admission of ~~65~~<u>a similar number of</u> H-2B workers for employment in Maryland <u>and Pennsylvania in 2014 and 2015</u>.

~~19~~18.  By regulation, the DHS requires a petition for H-2B visas to be accompanied by a temporary labor certification from the United States Department of Labor (DOL).  To obtain such a certification, an employer must first request a determination from DOL of the prevailing wage applicable to the employer's job openings and the area of employment.  The employer must then engage in specified efforts to recruit U.S. workers at no less than the prevailing wage.  If those recruitment efforts do not produce sufficient U.S. workers to fill all of the employer's job openings, the employer may submit a temporary labor certification application to DOL on ETA Form 9142<u>-B</u>.  That application requires the employer to set forth the terms and conditions of work that the employer intends to offer to the foreign workers it seeks to hire.  The terms must be no less favorable than the terms offered to U.S. workers.  In addition, the employer's offered wage must equal or exceed the most recent prevailing wage that is or will be issued by the Department of Labor to the employer for the time period the work will be performed.

~~20~~19.  If it determines that U.S. workers are not available to fill all of the employer's jobs, and that the terms and conditions of work offered to the foreign workers will not adversely affect the wages

and working conditions of similarly employed U.S. workers, DOL approves the labor certification application. At that point, the employer may petition DHS for issuance of H-2B visas.

~~21~~20. In each of the years 2013 through 2015, Defendant Outside Unlimited, Inc. obtained ~~a~~ prevailing wage determination<u>s</u> from DOL for the job of landscape laborer <u>in the counties where it had jobs</u> and recruited and hired U.S. landscape workers for ~~that position. This~~<u>those job positions. These</u> prevailing wage ~~was~~<u>rates were</u> included in the temporary labor certification applications filed by Outside Unlimited, Inc. on ETA Form 9142-B with the U.S. Department of Labor.

~~22~~21. Because the numbers of U.S. workers who accepted its jobs were not sufficient to fill all of the company's landscape laborer jobs, Outside Unlimited filed labor certification applications on ETA Form 9142-B so that it could hire additional foreign landscape workers <u>to work in Maryland and Pennsylvania</u> in 2013, 2014 and 2015. Those forms set forth the terms and conditions of work Defendant was offering to its H-2B workers. Among these terms was an assurance that the wage offered by Outside Unlimited, Inc. would equal or exceed the prevailing wage that was or would be issued by the DOL for the specified period of employment. Based on those offered contract terms, the DOL approved Defendant's temporary labor certification applications and DHS approved Defendant's H-2B visa petitions.

~~23~~22. In each of the years at issue Defendant supplemented its U.S. workforce with approximately 50 or more H-2B landscape laborers<u> to work in Maryland and Pennsylvania</u>.

~~24~~23. Defendant used some of its H-2B visas to hire Plaintiffs to work ~~as~~<u>for Outside Unlimited as</u> landscape laborers ~~on Outside Unlimited's Maryland operations~~ during 2013 ~~and 2014~~ -2015.

~~25~~24. In each of the years at issue, Defendant entered into work contracts with the U.S. and foreign H-2B workers it recruited to work as landscape laborers, including Plaintiffs. Those work

contracts explicitly and/or by operation of law, offered the terms and conditions of work set forth in Defendant's ETA Form 9142-B temporary labor certification applications., including the promise to pay the offered rate, which rate would equal or exceed the latest prevailing wage set by DOL (including prevailing wages set during the course of a season) and time-and-a-half the offered rate for hours over 40.

26<u>25</u>.  In the summer of 2013, DOL notified Defendant Outside Unlimited, Inc. of supplemental prevailing wage determinations that required Outside Unlimited to increase the wages of its landscape laborers because of an increase in the applicable prevailing wage.  Defendant Outside Unlimited, Inc. did not increase its wages in conformity with the notices it received from DOL and failed to pay Plaintiffs and the other landscape laborers at the new prevailing wage rate despite its contractual commitment to Plaintiffs and other class members to pay at least the prevailing wage that "will be" issued by DOL during the course of the 2013 season.

27<u>26</u>.  In each of the years from 2013 through 2015, Defendant Outside Unlimited, Inc. required its H-2B employees to pay the H-2B visa application fee of approximately $190 required by the U.S. government as a prerequisite for obtaining an H-2B visa to enter the United States to work for Outside Unlimited.  In each of the years at issue the visa application fee was primarily for the benefit of the employer and the visa fee payments made by Defendant's H-2B workers operated as *de facto* deductions from their first week's wages.

28.<u>27.</u>  Outside Unlimited, Inc. failed to reimburse Plaintiffs and the other class members during their first week of employment or anytime thereafter for their payment of visa fees, as described in Paragraph 27<u>26</u>.

29<u>28</u>.  In each of the years from 2013 through 2015 during which they were employed by Defendant, Plaintiffs and the other members of the classes incurred transportation expenses traveling

from their homes in Mexico to Defendant's jobsite in the United States.  <u>On information and belief these expenses exceeded $ 300 per worker.</u>

~~30~~<u>29</u>.   Outside Unlimited, Inc. failed to reimburse Plaintiffs and the other class members during their first week of employment or anytime thereafter for the transportation expenses they incurred in traveling from their homes in Mexico to Defendant's jobsite, as described in Paragraph ~~29~~<u>28</u>.

~~31~~<u>30</u>.   In each of the years at issue, the~~se~~ transportation expenses <u>described in paragraph 28 </u>were incurred primarily for the benefit of the employer and ~~the visa fee payments made by Defendant's H-2B workers~~ operated as *de facto* deductions from the~~ir~~ first week's wages<u> of Plaintiffs and the other class members</u>.

~~32~~<u>31</u>.   In each of the years from 2013 through 2015 during which they were employed by Defendant, Plaintiffs and the other class members incurred lodging expenses while awaiting processing of their H-2B visa applications by the United States Consulate.  <u>On information and belief these lodging expenses exceeded $ 30 for each worker.</u>  In each of the years at issue, these lodging ~~fees~~<u>expenses</u> in the consular city were incurred primarily for the benefit of the employer and ~~the visa fee payments made by Defendant's H-2B workers~~ operated as *de facto* deductions from their first week's wages.

~~33~~<u>32</u>.   Outside Unlimited failed to reimburse Plaintiffs and the other class members during their first week of employment or anytime thereafter for their lodging expenses they incurred in the consular city, as described in Paragraph ~~32~~<u>31</u>.

~~34~~<u>33</u>.   In each of the years from 2013 through 2015 during which they were employed by Defendant, Plaintiffs and the other class members paid a $6 fee to U.S. immigration officials at the U.S./Mexico border for issuance of Arrival/Departure Form I-94.  This form was necessary for the H-2B workers to enter the United States to work for Defendant.   In each of the years at issue, the fees incurred

for the issuance of Form I-94 were incurred primarily for the benefit of the employer and the visa fee payments made by Defendant's H-2B workers operated as *de facto* deductions from their first week's wages.

~~35~~34. Outside Unlimited, Inc. failed to reimburse Plaintiffs and the other class members during their first week of employment or anytime thereafter for the payment of the $6 fee for issuance of Form I-94, as described in Paragraph ~~34~~33.

~~36~~35. In each of the years from 2013 through 2015 during which they were employed by Defendant, Plaintiffs and the other class members were furnished accommodations by Defendant for which rental charges ~~were withheld from their weekly wages. These rental charges exceeded the reasonable value for these facilities.~~ of $75 per week were withheld from each worker's weekly wages. These rental charges exceeded the actual cost of the facilities provided to Plaintiffs and other class members as well as their reasonable value. For example, Plaintiff Gonzalez-Aviles shared modest accommodations in two story house with approximately 19 other class members with several persons per room. The actual cost of furnishing this housing was far less than the approximately $6000 per month Outside Unlimited withheld from the workers' wages as rent. On information and belief, other class members were provided similar accommodations and were similarly overcharged.

~~37~~36. In each of the years from 2013 through 2015 ~~during which Plaintiffs and the other class members were employed by~~ Defendant, Outside Unlimited, Inc. required ~~these landscape laborers~~ Plaintiffs and the members of the class to wear uniforms and to keep those uniforms clean. For its own convenience, Outside Unlimited ~~withheld moneys from the wages of Plaintiffs and the other class members for the alleged cost of laundering these~~ engaged a uniform company to provide clean uniforms~~.~~ for its workers on a weekly basis. Plaintiffs and the other class members were required to pay for this

uniform service through wage deductions of approximately $6 to $7 per week, (more for large sizes). These expenses were incurred primarily for the benefit of Outside Unlimited, Inc. and exceeded the reasonable cost of the laundering. ~~38.~~ The ~~deductions made~~charges for the uniforms were withheld by Outside Unlimited from the weekly wages of Plaintiffs and the other class members ~~for rent and uniform laundering, as described in Paragraphs 36 and 37, were made without the written authorization of Plaintiffs and the other members of the Statutory Claim Sub-Class.~~ .

37. Plaintiffs and the other class members performed work under the contracts described in paragraph 24 but Defendant intentionally did not record all of their compensable hours of work. On average Defendant failed to pay Plaintiffs and the other class members for approximately 1-2 hours per day. For example, during the workweek ending December 19, 2013, Plaintiff Heleodoro Peña-Gonzalez worked approximately 58 hours during the six days he was employed. Defendant credited Peña-Gonzalez with only 47.50 hours of work during that workweek. This example is typical of the experience of the other Plaintiffs and members of the class. On information and belief this under payment of hours occurred resulted from Defendant's failure to pay for time in the morning during which workers were required to assemble in the yard to receive crew and job assignments and for time spent traveling to the first job. Defendant also failed to pay Plaintiffs and the other class members for the time in the afternoon they spent returning to the yard from the last jobsite to unload and load the trucks in preparation for the next workday's assignments.

~~39. Defendant's failure to pay its landscape laborers, including Plaintiffs, for all of their hours of work, and the *de facto* and payroll deductions described above resulted in Defendant's landscape laborers, including Plaintiffs, receiving less than the federal and state minimum wage and the prevailing~~

~~wage for all hours up to 40 in a week and less than time and a half the prevailing rate for hours in excess of 40 in a workweek.~~

38. In addition, Plaintiffs Pablo Gonzalez-Aviles, Heleodoro Peña-Gonzalez, Jose Alberto Ramirez and other class members were employed to drive workers between their housing units and the yard, which time was not compensated by Defendant. These Plaintiffs and other class members spent three to four-and-a-half hours a week performing this uncompensated work.

39. Plaintiffs and other class members frequently worked overtime (*i.e.*, more than 40 hours a week). For example, according to Defendant's payroll records Plaintiff Heleodoro Peña-Gonzalez worked overtime (more than 40 hours) in at least 21 of the 40 weeks he was employed by Outside Unlimited during 2013. When the unrecorded hours of work described in paragraphs 37 and 38 are taken into consideration he and other class members worked overtime even more frequently than reflected in Defendant's records.

40. Defendant occasionally employed Plaintiffs Heleodoro Peña-Gonzalez, Pablo Gonzalez-Aviles, and other class members as supervisors and employed Plaintiff Jose Alberto Ramirez and other class members as full time supervisors of landscape laborers. Pursuant to Department of Labor regulations and their contracts, these Plaintiffs and class members were entitled to the higher prevailing wage applicable to first line supervisors of landscape workers and to drivers, but Defendant failed to pay the higher prevailing wage applicable to workers performing those tasks.

41. The deductions and *de facto* deductions described in paragraphs 26, 28, 31, 33, 35 and 36 brought the wages of Plaintiffs and other class members' below the DOL prevailing wage applicable to the jobs performed by Plaintiffs and other class members and below the FLSA and State minimum wage during each worker's first week of work. For example, during 2013, in his initial week of employment

(the workweek ending March 21, 2013), Plaintiff Heleodoro Peña-Gonzalez was credited by Defendant with 25.50 hours of work, for which he was paid gross wages of $280.50 for working 25.50 hours. When the *de facto* deductions for his visa, travel, lodging and I-94 fee are deducted (approximately $526.00) and the deductions for housing ($75.00) and uniforms ($5.62) are deducted, Plaintiff Peña-Gonzalez had net negative earnings for the workweek of -$326.12. This result was typical of the experiences of the other Plaintiffs and members of the class during the first work week.

42. The deductions described in Paragraphs 35 and 36 and the failure to pay for all hours of work described in paragraphs 37 and 38 brought Plaintiffs' wages below the applicable prevailing [MOU1]wage and each workers' contract wage in each of the workweeks after the first workweek.

43. As a result of the deductions described in Paragraphs 36 and 37, and the uncompensated hours of work described in paragraph 38 and 39, Plaintiffs did not receive time-and-a-half their regular rate or the prevailing wage in workweeks when their total hours of work (including the unrecorded hours of work) exceeded 40 hours. For example, Plaintiff Pablo Gonzalez-Aviles was credited by Defendant with 44.00 hours of work during the week ending December 12, 2013. At the prevailing wage of $10.72 for hours up to 40 and $16.08 (time-and-a-half times prevailing wage) for hours over 40 he should have received $493.12 and at his regular rate of $11/hour he should have received $506. Adding the four to six-and-a half hours of unrecorded hours of work he should have received in excess of $572. In fact, after the $75.00 charge for housing and $5.62 charge for uniform services were withheld from his wages, he received only $423.84 for the week, less than he should have received at the prevailing wage and at his regular rate for the hours he worked. Plaintiff Pablo Gonzalez-Aviles' experiences described above were typical of the members of Plaintiffs' class.

4044.   Defendant's actions in failing to pay at least the federal and state minimum wage and the prevailing wage for all hours of work and in failing to pay ~~required~~time-and-a-half the prevailing wage for overtime were willful.  On information and belief, Defendant was aware through its agent, MAS Labor H-2B, LLC, and through other means of the requirements of the federal and state minimum wage laws ~~as well as the requirement to pay H-2B-certified job positions no less than the prevailing wage for all hours of work and willfully or with reckless disregard ignored those requirements~~, including the fact that visa fees, transportation and lodging for H-2B workers constitute *de facto* deductions from a worker's first week's wages that violate the FLSA if they bring workers' wages below the FLSA minimum, that the deductions for uniforms and housing were improper, and that loading and unloading time is compensable.  Nevertheless, Defendant acted willfully or with reckless disregard in failing to pay Plaintiffs and the other class members in conformance with the requirements of the FLSA.

### COUNT I – FLSA

4145.   As a result of the above described actions, Plaintiffs and the other members of ~~the Statutory Claim Sub-Class~~Plaintiffs' class did not receive wages equal to or exceeding the FLSA minimum wages for each ~~hour up to forty in a~~ workweek~~,~~ in which they were employed by Defendant in 2013, 2014 and 2015.  In addition, because of the actions described above, in those workweeks in which they were employed in excess of 40 hours, Plaintiffs and the other class members did not receive ~~time and a half their regular~~ wages at a rate of ~~pay for all hours of work in excess of 40 in a workweek, and did not receive~~1.5 times their regular rate for ~~all~~ hours ~~less than 40 in workweeks in which they~~ worked ~~overtime hours~~in excess of 40 during the workweek.

~~42~~46. Plaintiffs and the other members of ~~the Statutory Claim Sub-Class~~Plaintiffs' class who opt into this action are entitled to relief for these violations pursuant to 29 U.S.C. §216(b).

## COUNT II- MARYLAND WAGE AND HOUR LAW

~~43~~47. As a result of the above described actions, Plaintiffs and the other members of ~~the Statutory Claim Sub-Class~~Plaintiffs' class did not receive minimum wage and overtime as required by the Maryland Wage and Hour Law, Md. Code, Labor & Employment Art. §§ 3-413 and 3-415.

~~44~~48. Defendant is liable to Plaintiffs and the other members of the ~~Statutory Claim Sub-Class~~class for actual damages ~~in~~ equal to the difference between the wages Defendants paid to Plaintiffs and the wages that Defendant was required to pay under the statute, liquidated damages equal to the difference between the wages Defendant paid to Plaintiffs and the wages that Defendant was required to pay under the statute, plus reasonable attorney's fees and costs.

## COUNT III- MARYLAND WAGE PAYMENT AND COLLECTION LAW

~~45. Defendant made deductions from the wages of Plaintiffs and the other members of the Statutory Claim Sub-Class without these employees having expressly authorized these deductions in writing, in violation of Md. Code, Labor & Employment Art. § 3-503~~49. Defendant's failure to pay Plaintiffs and other class members all wages due to them at the termination of their employment each year violated the Maryland Wage Payment and Collection Law, Md. Code, Labor & Employment Art. 3-505 for which Plaintiffs and the other members of the class are entitled to relief pursuant to Md. Code, Labor & Employment Art. 3-507.2.

~~46.    As a result of the violations of the Maryland Wage Payment and Collection Law as set out in Paragraph 45, Defendant is liable to Plaintiffs and the other members of the Statutory Claim Sub-Class for three times the amount of the wages withheld, plus reasonable attorney's fees and costs.~~

### COUNT IV – BREACH OF CONTRACT

4~~7~~50.    As a result of the actions described above, Defendant breached its work contracts with ~~its H-2B workers, including~~ Plaintiffs <u>and the members of Plaintiffs' class</u>, by failing to pay the ~~applicable~~<u>promised</u> prevailing wage for all hours of work~~. Among other things,~~ <u>up to 40 in a workweek and by failing to pay time-and-a-half the prevailing wage for all hours over 40.</u>   Defendant failed to pay Plaintiffs <u>Heleodoro Peña-Gonzalez, Pablo Gonzalez-Aviles</u> and ~~the~~Jose Alberto Ramirez and other class members ~~the supplemental prevailing wages due~~ for ~~2013~~<u>their</u> work ~~following the company's notification by DOL of~~<u>as drivers and first line supervisors of landscape laborers at</u> the prevailing wage ~~increase~~ <u>applicable to workers performing those tasks.</u>

### <u>COUNT V – BREACH OF CONTRACT WITH RESPECT TO THE 2013 SUPPLEMENTAL PREVAILING WAGE</u>

<u>51.    By failing to increase the wages of Plaintiffs and other class members to the level of the prevailing wage set forth in the Supplemental Prevailing Wage Determination sent to Defendant by DOL in 2013, Defendant breached its contracts with Plaintiffs and other class members who were employed by Defendant in 2013.</u>

4~~8~~<u>52</u>.    Plaintiffs and the class they seek to represent are entitled to relief for this violation pursuant to the common law of contracts.

- 17 -

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court:

a. Issue notice to the members of the ~~Statutory Sub-~~Class informing them of their right to opt into this action to pursue their claims under the FLSA and treating this case as an FLSA collective action;

b. Certify this case as a class action in accordance with Rule 23(b)(3) of the Federal Rules of Civil Procedure with respect to Plaintiffs' ~~breach of contract and Maryland statutory~~<u>state law</u> claims;

c. Enter judgment in favor of Plaintiffs and the opt-in plaintiffs on Plaintiffs' FLSA claims;

d. Enter judgment in favor of Plaintiffs and the ~~Statutory Sub-~~Class with respect to Plaintiffs' Maryland statutory claims;

e. Enter judgment in favor of Plaintiffs and ~~Plaintiffs' class~~<u>the Class</u> on Plaintiffs' breach of contract claims;

f. Award Plaintiffs, the opt-in plaintiffs and the members of the class their unpaid wages, liquidated damages, statutory penalty damages, costs ~~and~~<u>,</u> attorney's fees<u>, and such other relief as is just</u>.

Respectfully submitted,

_____
A. Darwin Holder, Jr.
Federal Bar #08474
Holder Law Group
P.O. Box 10509
Towson, MD  21285
Tel:   410-296-9550
Fax:  443-863-6633

darholder@holderlaw.com

Edward Tuddenham
228 W. 137th Street
New York, New York  10030
Tel:     212-234-5953
Fax:     512-532-7780
etudden@prismnet.com

Gregory S. Schell
Federal Bar #00277
~~Florida Legal Services, Inc.~~ <ins>9851 Daphne Avenue</ins>
~~Post Office Box 32159~~
Palm Beach Gardens, Florida   334~~2~~<ins>10</ins>
Tel:     561-~~582-3921~~<ins>627-2108</ins>
Fax:     561-328-3814
gschell99@gmail.com

ATTORNEYS FOR PLAINTIFFS