IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AVILES-CERVANTES, *et al.*,                  *

      Plaintiffs                          *

      v.                                        *                  Civil Action No. RDB-16-1214

OUTSIDE UNLIMITED, INC.,                 *

      Defendant.                         *

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## MEMORANDUM OPINION

Plaintiffs Rafael Aviles-Cervantes, Pablo Gonzalez-Aviles, Heleodoro Peña-Gonzalez, and Jose Alberto Ramirez-Bernardino have brought this putative class action against Defendant Outside Unlimited, Inc. ("Defendant" or "Outside Unlimited"), a landscaping company operating in Maryland and Pennsylvania, on behalf of themselves and all other temporary guestworkers hired by Outside Unlimited as landscape laborers in 2013, 2014, and 2015, pursuant to the H-2B visa program.[1]  Second Am. Compl., ¶¶ 1, 6, ECF No. 24.[2]  Plaintiffs allege violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* (Count I); the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. § 3-401, *et seq.* (Count II); the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. § 3-501, *et seq.* (Count III); and two Breach of Contract claims (Counts IV & V), in connection with their employment by Outside

---

[1] As this Court has recently explained in *Outdoor Amusement Bus. Ass'n, Inc. v. Dep't of Homeland Sec.*, No. ELH-16-1015, 2017 WL 3189446, at *2 (D. Md. July 27, 2017), "[t]he H-2B visa program permits [United States] employers to recruit and hire foreign workers to fill temporary unskilled, non-agricultural positions for which domestic workers cannot be located." (citing 8 U.S.C. § 1101(a)(15)(H)(ii)(b); *La. Forestry Ass'n, Inc. v. Sec'y of Labor*, 745 F.3d 653, 658 (3d Cir. 2014)).

[2] The Second Amended Complaint (ECF No. 24) is the operative complaint in this action.

Unlimited between 2013 and 2015.  *Id.* ¶¶ 45-52.  Currently pending before this Court is Outside Unlimited's Motion to Dismiss the Second Amended Complaint (ECF No. 27). The parties' submissions have been reviewed, and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2016).  For the reasons stated herein, Outside Unlimited's Motion to Dismiss the Second Amended Complaint (ECF No. 27) is DENIED.  Although Plaintiffs allege, *inter alia*, violations of Department of Labor H-2B regulations by Outside Unlimited, this action is properly before this Court on Plaintiffs' Fair Labor Standards Act claims, and Plaintiffs were not required to exhaust Department of Labor administrative remedies prior to filing suit.  To the extent that certain Department of Labor H-2B visa regulations are currently under review in related proceedings[3], a stay of this action or severance of claims may be appropriate if those related proceedings are not resolved prior to trial in this case.  However, this Court will defer ruling on that issue, as the parties have not fully briefed their positions.

## BACKGROUND

In ruling on the Defendant's Motion to Dismiss, this Court "accept[s] as true all well-pleaded facts in [the] [C]omplaint and construe[s] them in the light most favorable to the [P]laintiff."  *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).  "Since at

---

[3] Defendant Outside Unlimited generally contends that "moving ahead in this case would inevitably disrupt three proceedings."  Mem. Supp. Mot., p. 13, ECF No. 27-1.  First, Outside Unlimited has filed an administrative appeal of the Department of Labor's 2013 "supplemental prevailing wage determination" with respect to H-2B guestworkers hired by Outside Unlimited.  All parties acknowledge that those proceedings remain pending.  Additionally, the United States Court of Appeals for the Fourth Circuit is considering an appeal in *Gonzalez-Aviles, et al. v. Perez, et al.*, No. JFM-15-3463, *appeal filed*, No. 16-2007, a related case filed in this Court, in which Plaintiffs have sought to compel the Department of Labor to resolve the pending appeals of its 2013 supplemental prevailing wage determinations.  Finally, Outside Unlimited contends that "the Department of Labor has a pending rulemaking that may substantially affect this proceeding."  *Id.* Plaintiffs acknowledge that severance of certain claims may be appropriate if the related proceedings are not resolved prior to trial in this case, although the parties have not fully briefed their positions on this issue.  *See* Pl. Opp'n, p. 12, ECF No. 30.  As discussed herein, Defendants have identified no grounds for *dismissing* this action.  However, this Court will consider *staying* this case or *severing* certain of Plaintiffs' claims if these related proceedings are not resolved prior to trial in this case.

least 2012, [Defendant Outside Unlimited, Inc. ("Defendant" or "Outside Unlimited")] has been engaged in the business of providing landscaping services to customers in Maryland and Pennsylvania."  Second Am. Compl., ¶ 14, ECF No. 24.  "In order to find sufficient workers to fill its landscaping jobs, [Outside Unlimited] petitioned the [United States] Department of Homeland Security ("DHS")" in the years 2013, 2014, and 2015 "for permission to import foreign workers to perform landscape work using H-2B temporary work visas." *Id.* ¶ 17.  Plaintiffs Rafael Aviles-Cervantes, Pablo Gonzalez-Aviles, Heleodoro Peña-Gonzalez, and Jose Alberto Ramirez-Bernardino are "citizens of the Republic of Mexico," hired by Outside Unlimited as "landscape laborers" between 2013 and 2015, pursuant to the H-2B visa program. *Id.* ¶¶ 1, 5, 14-15.

As this Court has recently explained in *Outdoor Amusement Bus. Ass'n, Inc. v. Dep't of Homeland Sec.*, No. ELH-16-1015, 2017 WL 3189446, at *2 (D. Md. July 27, 2017), "[t]he H-2B visa program permits [United States] employers to recruit and hire foreign workers to fill temporary unskilled, non-agricultural positions for which domestic workers cannot be located." (citing 8 U.S.C. § 1101(a)(15)(H)(ii)(b); *La. Forestry Ass'n, Inc. v. Sec'y of Labor*, 745 F.3d 653, 658 (3d Cir. 2014)).  Pursuant to Department of Homeland Security regulations, prior to authorizing an eligible employer to hire H-2B guestworkers, the United States Department of Labor ("DOL") must "determine whether (1) qualified workers in the United States are available to fill an employer's job and whether (2) the alien's employment will adversely affect wages and working conditions of similarly employed [United States] workers." *Id.* (citing 8 C.F.R. § 214.2(h)(6)(iii)(A)).  "If, after reviewing an employer's job offer and recruitment efforts, the Secretary of Labor determines that [United States] workers

3

are not available to fill the jobs described in the employer's application and that the offered terms of work will not adversely affect similarly employed [United States] workers, DOL issues a 'temporary labor certification' that the employer must attach to the H-2B visa petition it submits to [the Department of Homeland Security]." *Id.* (citing 8 C.F.R. §§ 214.2(h)(6)(iii)(C) and 214.2(h)(6)(iv)(A)). "No petition for H-2B visas may be issued by DHS without an approved labor certification from DOL." *Id.*

"Because the numbers of [United States] workers who accepted [Outside Unlimited's] jobs were not sufficient to fill all of the company's landscape laborer jobs," the Plaintiffs contend that "Outside Unlimited filed labor certification applications on ETA Form 9142-B so that it could hire additional foreign landscape workers to work in Maryland and Pennsylvania in 2013, 2014 and 2015." Second Am. Compl., ¶ 21, ECF No. 24. "Those forms set forth the terms and conditions of work [Outside Unlimited] was offering to its H-2B workers, [including] . . . an assurance that the wage offered by Outside Unlimited [ ] would equal or exceed the prevailing wage that was or would be issued by the DOL for the specified period of employment." *Id.* "Based on those offered contract terms, the DOL approved Defendant's temporary labor certification applications and DHS approved Defendant's H-2B visa petitions." *Id.*

Plaintiffs allege that in 2013, 2014, and 2015, Outside Unlimited "entered into work contracts with the [United States] and foreign H-2B workers it recruited to work as landscape laborers, including Plaintiffs." *Id.* ¶ 24. "Those work contracts explicitly and/or by operation of law, offered the terms and conditions of work set forth in Defendant's ETA Form 9142-B temporary labor certification applications, including the promise to pay the

offered rate, which rate would equal or exceed the latest prevailing wage set by DOL (including prevailing wages set during the course of a season) and time-and-a-half the offered rate for hours over 40." *Id.* "In the summer of 2013, DOL notified [ ] Outside Unlimited [ ] of supplemental prevailing wage determinations that required Outside Unlimited to increase the wages of its landscape laborers because of an increase in the applicable prevailing wage." *Id.* ¶ 25. Plaintiffs contend that Outside Unlimited "did not increase its wages in conformity with the notices it received from DOL and failed to pay Plaintiffs and the other landscape laborers at the new prevailing wage rate despite its contractual commitment to Plaintiffs and other class members to pay at least the prevailing wage that 'will be' issued by DOL during the course of the 2013 season." *Id.*[4]

Plaintiffs additionally allege that Outside Unlimited failed to reimburse them for pre-employment visa, transportation, and lodging expenses; took improper deductions from their weekly wages for uniform services and housing; failed to pay workers for approximately 1-2 hours of work per day for time spend loading and unloading trucks and traveling from Outside Unlimited's "yard" to job sites and back again; failed to pay workers who were employed by Outside Unlimited to drive workers between their housing and the yard an additional 3-4.5 hours per week; and failed to pay the applicable prevailing wage to Plaintiffs and other workers performing *supervisory* and *driving* tasks. *Id.* ¶¶ 26-40. As a result of these unlawful practices, Plaintiffs contend that they and other class members received less than their contract wages and less than the federal and state minimum wages. *Id.* ¶¶ 41-43.

---

[4] As noted *supra*, Outside Unlimited has administratively appealed that 2013 supplemental prevailing wage determination, and the parties have indicated that the appeal process remains pending.

Plaintiffs have now brought this putative class action on behalf of "[a]ll H-2B temporary guestworkers hired by Defendant to fill jobs described in Defendant's 2013, 2014 or 2015 ETA Form 9142 labor certification applications," alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* (Count I); the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. § 3-401, *et seq.* (Count II); the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. § 3-501, *et seq.* (Count III); and two Breach of Contract claims (Counts IV & V). *Id.* ¶¶ 7, 45-52. Plaintiffs filed their initial Complaint in this action on April 22, 2016 (ECF No. 1), but have subsequently amended that Complaint twice. Plaintiffs' Second Amended Complaint (ECF No. 24) is now the operative complaint. Outside Unlimited previously filed a Motion to Dismiss the First Amended Complaint (ECF No. 13), but that motion was rendered moot upon Plaintiffs' filing of the Second Amended Complaint. *See* Letter Order, ECF No. 29. Outside Unlimited has now filed a Motion to Dismiss the Second Amended Complaint (ECF No. 27), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

<u>STANDARD OF REVIEW</u>

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The United States Supreme Court's opinions in *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009),

"require that complaints in civil actions be alleged with greater specificity than previously

was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).  In

*Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ

when ruling on Rule 12(b)(6) motions to dismiss.  *Iqbal*, 556 U.S. at 678.  First, while a court

must accept as true all factual allegations contained in the complaint, legal conclusions drawn

from those facts are not afforded such deference.  *Id.*  (stating that "[t]hreadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not

suffice."); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although

we are constrained to take the facts in the light most favorable to the plaintiff, we need not

accept legal conclusions couched as facts or unwarranted inferences, unreasonable

conclusions, or arguments." (internal quotation marks omitted)).  Second, a complaint must

be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

ANALYSIS

I.      This Court's Consideration of All Arguments Raised in Outside Unlimited's Motion
        to Dismiss is Not Precluded by Rule 12(g)(2) of the Federal Rules of Civil Procedure

As a preliminary matter, Plaintiffs object that Outside Unlimited's "second motion to

dismiss raises new legal arguments that it could have raised, but chose not to, when it filed

its initial motion to dismiss."  Pl. Opp'n, p. 1, ECF No. 30.  As discussed *supra*, Outside

Unlimited previously filed a Motion to Dismiss the Plaintiffs' First Amended Complaint

(ECF No. 13), but that motion was rendered moot upon Plaintiffs' subsequent filing of their

Second Amended Complaint.  *See* Letter Order, ECF No. 29.  Rule 12(g)(2) of the Federal

Rules of Civil Procedure provides that "[e]xcept as provided in Rule 12(h)(2) or (3)[5], a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." "[T]o the extent Defendant's [second] motion raises new grounds for dismissing the complaint that could have been raised before," including Defendant's administrative exhaustion and contract formation arguments discussed herein, Plaintiffs now contend that "those defenses are waived and should be summarily rejected." Pl. Opp'n, p. 3, ECF No. 30.

Although a technical reading of Rule 12(g)(2) could bar Outside Unlimited from filing a successive pre-answer motion to dismiss, courts routinely exercise discretion in applying this rule. The United States Court of Appeals for the Seventh Circuit has specifically held in *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012) that "Rule 12(g)(2) does not prohibit a new Rule 12(b)(6) argument from being raised in a successive motion." Additionally, the United States Court of Appeals for the Ninth Circuit has recently observed in *In re Apple Iphone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017) that Rule 12(g)(2) should be read "to secure the just, speedy, and inexpensive determination of every action and proceeding" [quoting Fed. R. Civ. P. 1] and that "[d]enying late-filed Rule 12(b)(6) motions and relegating defendants to the three procedural avenues specified in Rule 12(h)(2) can produce unnecessary and costly delays, contrary to the direction of Rule 1." Although the United States Court of Appeals for the Fourth Circuit has not squarely addressed this issue, this Court has interpreted Rule 12(g)(2) permissively. *See, e.g., F.T.C. v. Innovative Mktg., Inc.*, 654

---

[5] Rule 12(h)(2) of the Federal Rules of Civil Procedure exempts from this general waiver any Rule 12(b)(6) defenses that are raised (A) in an Answer; (B) in a Motion for Judgment on the Pleadings; or (C) at trial. Rule 12(h)(3) exempts challenges to a court's subject-matter-jurisdiction. Fed. R. Civ. P. 12(h)(3). None of these exemptions apply to the pending Motion to Dismiss.

F. Supp. 2d 378, 384 (D. Md. 2009); *Mylan Laboratories, Inc. v. Akzo, N.V.,* 770 F. Supp. 1053,

1059 (D. Md. 1991); *see also Superior Performers, Inc. v. Ewing,* No. 1:14CV232, 2015 WL

3823907, at *2 (M.D.N.C. June 19, 2015); *Tatum v. R.J. Reynolds Tobacco Co.,* No. 02–373, 2007

WL 1612580, at *5–6 (M.D.N.C. May 31, 2007).

As a matter of judicial efficiency, this Court will consider all of Outside Unlimited's

arguments in the pending Motion to Dismiss.  As this Court has observed in *Dart Drug Corp.*

*v. Corning Glass Works,* 480 F. Supp. 1091, 1095 n. 3 (D. Md. 1979), "[a] complaint is always

vulnerable to a challenge for legal sufficiency[, and] it is far more efficient to treat the

arguments prior to more extensive discovery."   There is no indication that Outside

Unlimited filed its second Motion to Dismiss (ECF No. 27) in order to delay these

proceedings or to inconvenience or prejudice the Plaintiffs. *See Am. Chiropractic Ass'n v. Trigon*

*Healthcare, Inc.,* No. 00–113, 2001 WL 420602, *2 (W.D. Va. Jan. 29, 2001) (noting that a

second motion to dismiss may be permitted if it "will not visit that sort of inconvenience or

prejudice upon the plaintiffs that is sought to be avoided under the federal rules").  On the

contrary, Outside Unlimited filed the pending motion only after Plaintiffs filed a Second

Amended Complaint.  Therefore, this Court will consider all arguments raised in Outside

Unlimited's pending Motion to Dismiss the Second Amended Complaint (ECF No. 27).

II.   <u>Plaintiffs Were Not Required to Exhaust Department of Labor Administrative</u>
      <u>Enforcement Mechanisms Prior to Bringing this Action</u>

Outside Unlimited first argues that the Plaintiffs have failed to exhaust their

administrative remedies.  Mem. Supp. Mot., p. 3, ECF No. 27-1.  Defendant contends that

United States Department of Labor ("DOL") regulations, if legally binding as the Plaintiffs

allege[6], "require DOL to resolve [Plaintiffs'] claims." *Id.*  Specifically, Defendant claims that

"complaint, investigation, and administrative enforcement proceedings before the United

States Department of Labor," set forth at "20 C.F.R. §§ 655.60, 655.65(i) (2009)" and "29

U.S.C. § 211(a)," are the Plaintiffs' "comprehensive and exclusive remedial mechanism." *Id.*

at 1-3, Mot., p. 1, ECF No. 27.  By bringing this action before exhausting those remedies,

Outside Unlimited objects that the Plaintiffs are "attempt[ing] to circumvent that mandatory,

contract-based remedy."  Mem. Supp. Mot., p. 1, ECF No. 27-1.

Although Outside Unlimited relies heavily on the case of *Reiter v. Cooper*, 507 U.S. 258,

269 (1993), the United States Supreme Court in that case held that administrative exhaustion

*was not required* before bringing suit in a dispute over shipping rates under the Interstate

Commerce Act, 49 U.S.C. §§ 10701(a), 10762.  *Reiter*, 507 U.S. at 269.  The Supreme Court

in *Reiter* did observe that "[w]here relief is available from an administrative agency, the

plaintiff is *ordinarily required* to pursue that avenue of redress before proceeding to the

courts," *id.*, but the Supreme Court has previously made clear in *Barrentine v. Arkansas-Best*

*Freight Sys., Inc.*, 450 U.S. 728, 740 (1981) that the Fair Labor Standards Act "grants

individual employees *broad access to the courts* . . . [and] *[n]o exhaustion requirement or other*

*procedural barriers are set up*, and no other forum for enforcement of statutory rights is referred

to or created by the statute." (emphasis added).  The United States District Court for the

Western District of North Carolina has confirmed this principle in *Sinclair v. Mobile 360, Inc.*,

---

[6] Plaintiffs claim, *inter alia*, violations of "Department of Labor regulations and their contracts [with Outside Unlimited]."  Second Am. Compl., ¶ 40, ECF No. 24.  If those allegations are correct, Defendant contends, then those same regulations, either "of their own force" or as "incorporate[ed]" in the contracts, require that Plaintiffs seek redress through the DOL's administrative enforcement mechanism before bringing suit in this Court.  For the sake of this argument, Defendant assumes that the DOL regulations in effect from 2013 through 2015 did in fact bind Outside Unlimited, but explicitly "preserves its right to contend that there are no binding regulatory obligations." *Id.*

No. CIV 107CV117, 2007 WL 2344813, at *5–6 (W.D.N.C. Aug. 14, 2007) ("The court can find absolutely no requirement under the FLSA or the EPA that a plaintiff first file an administrative claim.")   Although the Department of Labor regulations cited by Outside Unlimited grant the DOL Wage and Hour Division Administrator authority to investigate employer misconduct with respect to H-2B visas, they do not set forth an "exclusive" mechanism for processing employee wage and hour complaints, nor do they mandate an administrative "exhaustion requirement," as Defendant claims.   In recent years, numerous courts have denied motions to dismiss similar FLSA actions brought by H-2B guestworkers against their employers, and none have suggested that an administrative exhaustion requirement applies to those claims.  *See, e.g., Moodie v. Kiawah Island Inn Co., LLC*, 124 F. Supp. 3d 711, 729 (D.S.C. 2015); *Cordova v. R & A Oysters, Inc.*, 101 F. Supp. 3d 1192, 1200 (S.D. Ala. 2015); *Teoba v. TruGreen Landcare LLC*, No. 10-CV-6132 CJS JWF, 2013 WL 1560208, at *4 (W.D.N.Y. Apr. 10, 2013).

Although there is limited case law on this specific issue, the United States District Court for the Southern District of New York in *Soler v. G & U, Inc.*, 477 F. Supp. 102, 105 (S.D.N.Y. 1979) has rejected an argument similar to that raised here by Outside Unlimited. Like the Plaintiffs in this case, the Plaintiffs in the *Soler* case were "100 migrant farmworkers," who brought an action against their employers under the Fair Labor Standards Act "to recover wage deductions made by the defendants for housing provided to the farmworkers in the defendants' labor camps."  *Soler*, 477 F. Supp. at 103.  Like Outside Unlimited, the defendant employers in *Soler* moved to dismiss the complaint on the grounds that "plaintiffs must exhaust [their] administrative 'remedy' before resorting to the judiciary

for review of an agency decision." *Id.* at 104. Specifically, they argued that plaintiffs had "no cause of action against them" until the Department of Labor determined "whether the[ir] deduction rate [was] fair." *Id.* at 103-104.

Like the Plaintiffs in *Soler*, Outside Unlimited contends that Plaintiffs' claims in this case depend, in part, on the outcome of the Department of Labor's pending administrative review of its 2013 supplementary prevailing wage rates. However, the United States District Court for the Southern District of New York in *Soler* squarely rejected defendants' argument that "no cause of action [arises] until the agency acts." *Id.* at 105. Although the court did acknowledge that plaintiffs' claims could not proceed until the Department of Labor rendered an administrative determination as to the "reasonableness" of defendants' deductions, the Court stayed the case pending that determination and *did not dismiss* the action entirely. *Id.* at 105. "[I]t cannot be that Congress meant to rob employees of access to the courts for recoupment of wages simply because it felt that the question of what is fair value for lodgings is better decided by labor experts than through the judicial process." *Id.; see also Louis v. Geneva Enterprises, Inc.*, 128 F. Supp. 2d 912, 916 (E.D. Va. 2000) ("[A] person with an FLSA claim has a *statutory right* to have his case heard in court) (emphasis added). Likewise, this Court will not dismiss Plaintiffs' claims, but will consider staying this case or severing certain of Plaintiffs' claims if the Department of Labor's administrative review does not conclude prior to trial in this case.

Additionally, several courts have made clear that employees are not bound by the terms of arbitration agreements or collective bargaining agreements in asserting their FLSA rights. The United States Court of Appeals for the Fourth Circuit has held in *Austin v.*

12

*Owens-Brockway Glass Container, Inc.*, 78 F.3d 875, 883 (4th Cir. 1996) that "congressionally granted FLSA rights take precedence over conflicting provisions in a collective bargaining compensation arrangement." The United States Court of Appeals for the Second Circuit has similarly held in *Tran v. Tran*, 54 F.3d 115, 118 (2d Cir. 1995), citing *Barrentine supra*, that "all" of a former employee's claims against his former employer "*other than those stated under the FLSA* should have been the subject of a timely demand under the arbitration clause of the applicable union contract . . . . [b]ut in so far as the wage hour claims of plaintiff are concerned, plaintiff was *not required to seek grievance and arbitration* and was and is entitled to have those claims considered on the merits in the district court." (emphasis added); *see also Louis v. Geneva Enterprises, Inc.*, 128 F. Supp. 2d 912, 916 (E.D. Va. 2000) ("[U]nder *Barrentine* and *Tran* a plaintiff bringing an FLSA claim has a right to have their claim heard in court before he exhausts his arbitration remedy pursuant to a signed agreement.)

For all of these reasons, the weight of authority is clear that Plaintiffs were not required to exhaust Department of Labor administrative enforcement mechanisms prior to bringing this action. With respect to Plaintiffs' state law claims for violations of the Maryland Wage and Hour Law, Maryland Wage Payment and Collection Law, and claims for Breach of Contract, Defendants have likewise identified no authority mandating administrative exhaustion. Accordingly, Outside Unlimited's Motion to Dismiss (ECF No. 27) is DENIED as to its administrative exhaustion argument.

III.   Plaintiffs Have Sufficiently Pled Their Entitlement to the Three-Year Statute of Limitations For "Willfull" Violations of the Fair Labor Standards Act

Outside Unlimited further contends that Plaintiffs' Fair Labor Standards Act claims (Count I) "relating to paychecks received *on or before April 22, 2014* are time-barred under the

FLSA's default limitations period." Def. Reply, p. 12, ECF No. 31 (emphasis added). As this Court has recently explained in *Harbourt v. PPE Casino Resorts Maryland, LLC*, No. CCB-14-3211, 2017 WL 281992, at *2 (D. Md. Jan. 23, 2017), "[t]he FLSA has a two-tiered statute of limitations . . . . [f]or ordinary violations there is a two-year statute of limitations . . . . [f]or 'willful' violations there is a three-year statute of limitations." (citing 29 U.S.C. § 255(a); *Desmond v. PNGI Charles Town Gaming, LLC.*, 630 F.3d 351, 357 (4th Cir. 2011)). As noted *supra*, Plaintiffs have alleged violations of the Fair Labor Standards Act with respect to their employment by Defendant in *2013, 2014, and 2015*. Second Am. Compl., ¶ 45, ECF No. 24. Although they did not file the initial Complaint in this action until April 22, 2016, Plaintiffs claim "willful" violations of the FLSA by Outside Unlimited. *Id.* ¶¶ 37, 44. Defendant now argues that Plaintiffs have failed to *plausibly allege* "willfulness" and, accordingly, have not "alleged entitlement to the FLSA's three-year limitation period." Mem. Supp. Mot., p. 10-12, ECF No. 27-1. Therefore, Outside Unlimited has moved to dismiss Plaintiffs' FLSA claims arising before April 22, 2014, *two years* prior to their filing of the initial Complaint. *Id.*

As this Court has recently confirmed in *Rose v. Harloe Mgmt. Corp.*, No. GLR-16-761, 2017 WL 193295, at *4 (D. Md. Jan. 17, 2017), " '[b]ecause the question of whether [a defendant's] alleged [FLSA] violations were 'willful' is not an *element* of plaintiff[s'] claims' but rather an 'anticipat[ion of] a *limitations defense* that [the] defendant[ ] may raise,' [plaintiffs] do[ ] not need to allege specific facts that [the] defendant[ ] willfully violated the FLSA." (quoting *Ford v. Karpathoes, Inc.*, No. ELH-14-0824, 2014 WL 6621997, at *9, (D. Md. Nov. 20, 2014) (emphasis added). This Court has repeatedly rejected Outside Unlimited's position at the motion to dismiss stage. *See Aguilar v. ALCOA Concrete & Masonry, Inc.*, No. TDC-15-

0683, 2015 WL 6756044, at *2 (D. Md. Nov. 4, 2015) (rejecting defendant's argument in its motion to dismiss that plaintiff did not adequately plead willfulness because willfulness is an affirmative defense); *Ford*, 2014 WL 6621997, at *9 (D. Md. Nov. 20, 2014) (explaining that "plaintiffs do not need to allege specific facts supporting their allegation that defendants willfully violated the FLSA."). "Plaintiffs may bear the burden to prove willfulness, but [Rule 12(b)(6)] does not require that Plaintiffs prove their claims at this stage." *Alcorn v. George Mason Mortg., LLC*, No. RDB-15-2727, 2016 WL 3440261, at *4 (D. Md. June 23, 2016).

Even if the Plaintiffs were required to plead "specific facts" in support of their allegations of "willfulness" at this stage of the proceedings, they have adequately done so. "An employer's violation of the FLSA is willful if 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.' " *Aguilar*, 2015 WL 6756044, at *2 (D. Md. Nov. 4, 2015) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). Plaintiffs have alleged that Outside Unlimited "acted *willfully* or with reckless disregard in failing to pay [them] and the other class members in conformance with the requirements of the FLSA." Second Am. Compl., ¶ 44, ECF No. 24 (emphasis added). Specifically, Plaintiffs claim that they and the other class members "performed work under [their contracts with Outside Unlimited], but [Outside Unlimited] intentionally did not record all of their compensable hours of work," despite having been made "aware through its agent, MAS Labor H-2B, LLC, and through other means of the requirement of the federal and state minimum wage laws . . . ." *Id.* ¶ 37, 44. They further allege that "Defendant *intentionally* did not record all of their compensable hours of work." *Id.* ¶ 37 (emphasis added). For all of these reasons, Outside Unlimited's Motion to Dismiss

15

the Second Amended Complaint (ECF No. 27) is DENIED as to Plaintiffs' entitlement to the three-year statute of limitations for "willful violations" of the Fair Labor Standards Act.

IV.   Plaintiffs Have Adequately Alleged that Their Morning and Evening Travel To and From Outside Unlimited's Worker Assembly "Yard" is Covered Under the FLSA

Outside Unlimited next argues that the Fair Labor Standards Act does not "require[ ] Plaintiffs to be paid for their morning commute." Mem. Supp. Mot., p. 4, ECF No. 27-1. As noted *supra*, Plaintiffs allege, *inter alia*, that Outside Unlimited "fail[ed] to pay for time in the morning during which workers were required to assemble in the yard to receive crew assignments and for time spent traveling to the first job," failed to pay for the time during which "workers [were driven] between their housing units and the yard," and "failed to pay . . . for the time in the afternoon they spent returning to the yard from the last jobsite to unload and load the trucks in preparation for the next workday's assignments." Second Am. Compl., ¶¶ 37-38, ECF No. 24. Defendant objects that this "commuting" work time was not "indispensable and integral" to the workers' "principal activity" and, accordingly, has moved to dismiss Plaintiffs' FLSA claims to the extent they rely on these allegations.

As this Court has recently explained in *Depew v. Mobile Dredging & Pumping Co.*, No. JMC-15-03080, 2017 WL 1382307, at *6 (D. Md. Apr. 18, 2017), the Portal–to–Portal Act of 1947, 29 U.S.C. §§ 251–262, "which amended the FLSA, exempts from compensation two types of activities that had previously been treated as compensable work." (citing *Ross v. Wolf Fire Prot., Inc.*, 799 F. Supp. 2d 518, 523 (D. Md. 2011)). "First, the act provides that 'employers are not liable for an employee's time spent 'walking, riding, or traveling to and from the actual place of performance of the *principal activity or activities* which such employee is employed to perform.' " *Id.* (quoting *Jones v. Hoffberger Moving Servs. LLC*, 92 F. Supp. 3d

405, 409 (D. Md. 2015)) (emphasis in original). "And second, the act provides that 'employers are not liable for an employee's time spent on 'activities which are preliminary to or postliminary to said *principal activity or activities*, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such *principal activity or activities*.'" *Id.* (quoting *Jones*, 92 F. Supp. 3d at 409–10) (emphasis in original). "'To determine an employer's liability for unpaid wages and overtime, the key inquiry is whether such activities are properly labeled principal activities under the Portal–to–Portal Act.'" *Id.* "In *Integrity Staffing Sols., Inc. v. Busk*, 135 S. Ct. 513 (2014), the Supreme Court determined that the test for whether an activity is 'integral and indispensable' is 'tied to the productive work that the employee is *employed to perform*.'" *Id.* (quoting *Jones*, 92 F. Supp. 3d at 410) (emphasis in original). "That is, '[a]n activity is only 'integral and indispensable' to the performance of an employee's principal activities if 'it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities.'''" *Id.*

Although ruling on a motion for summary judgment, rather than a motion to dismiss, this Court in *Depew* has recently held that a sewer cleaning contractor's failure to compensate laborers for their daily "commute" from Sparrows Point in Baltimore, Maryland to a Washington, D.C. job site *was not categorically exempt from coverage* under the Fair Labor Standards Act. *Depew*, 2017 WL 1382307 at 7. Similar to the Plaintiffs' allegations in this case, the laborers in the *Depew* case were required to travel to a company-owned parking lot every morning, where they loaded trucks with equipment necessary for their work and then transported those trucks to the Washington, D.C. job site. *Id.* Although the laborers in

Depew were "commuting" from Sparrows Point to Washington, DC, "they could not perform their work [at the job site] without the tools and work equipment they transported." *Id.* Likewise, Plaintiffs allege that they had to travel to the yard "to receive crew assignments" and to "load and unload trucks" in preparation for their work assignments. This Court has similarly held in *Carrillo v. Borges Constr., LLC*, No. GJH-13-641, 2016 WL 5716186 (D. Md. Sept. 30, 2016) that time spent by laborers "at the end of their work duties . . . driv[ing] [their employers'] equipment back to [their employers'] place of business and return[ing] the equipment to a secure location . . . was 'integral and indispensable to their principal activity as laborers and construction workers' and thus 'should have been compensated' " under the FLSA. *Id.* at 8 (quoting *Carrillo*, 2016 WL 5716186 at *4). *See also Jones v. Hoffberger Moving Servs. LLC*, 92 F. Supp. 3d 405, 413 (D. Md. 2015) (denying laborers' claims for compensation as to pre-work commute to employer's *optional* worker pick-up location at company-owned warehouse only because "no reasonable jury could find that plaintiffs were *required* to meet at the warehouse to perform work.") (emphasis added).

For these reasons, this Court will not dismiss Plaintiffs' allegations at this stage of the proceedings. Plaintiffs have stated a plausible claim that their daily travel time to and from "the yard" was "integral and indispensable" to their "primary work" and, therefore, not categorically exempt from coverage under the Fair Labor Standards Act. Additionally, as this Court has recently confirmed in the *Depew* case, discussed *supra*, "the *precise nature*" of an employee's pre- and post-work duties, for purposes of FLSA coverage, "is a question of fact." *Depew*, 2017 WL 1382307 at 7. Therefore, Outside Unlimited's Motion to Dismiss the Second Amended Complaint (ECF No. 27) is DENIED as to Plaintiffs' "commuting" time.

V.   Plaintiffs Have Adequately Alleged Their Entitlement to Compensation for Inbound
     Travel Expenses from their Homes in Mexico to the United States

Outside Unlimited further contends that the Fair Labor Standards Act "does not require [it] to pay . . . Plaintiffs' voluntarily-incurred travel expenses in coming from their homes in Mexico to Maryland." Mem. Supp. Mot., p. 6, ECF No. 27-1. As discussed *supra*, Plaintiffs have alleged, *inter alia*, that they "incurred transportation expenses traveling from their homes in Mexico to Defendant's jobsite in the United States, . . . exceed[ing] $ 300 per worker . . . [, and] Outside Unlimited failed to reimburse [them] . . . operat[ing] as *de facto* deductions from the[ir] first week's wages." Second Am. Compl., ¶¶ 28-30, ECF No. 24.

Outside Unlimited relies heavily on the case of *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 403 (5th Cir. 2010), in which the United States Court of Appeals for the Fifth Circuit held that H-2B employers were not required to reimburse their employees' inbound travel expenses. While neither the United States Court of Appeals for the Fourth Circuit nor this Court have addressed this question directly, several United States District Courts within the Fourth Circuit have rejected the Fifth Circuit's reasoning in the *Castellanos-Contreras* case. In the recent case of *Carlos Humberto Cab Siquic v. Star Forestry, LLC*, No. 3:13CV00043, 2016 WL 1117627, at *1 (W.D. Va. Mar. 17, 2016), a proposed class of H-2B guestworkers brought an action against their employers for violations of the Fair Labor Standards Act and Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. §§ 1801 *et seq*. Like Plaintiffs in this case, the plaintiffs in the *Carlos Humberto Cab Siquic* case alleged that they "earned significantly less than the minimum wage during their first week of work . . . [because they] spent considerable [unreimbursed] sums of money in order to process their H-2B visas and to travel to the United States." *Id*. The United States

District Court for the Western District of Virginia granted default judgment against the Defendants on their FLSA claim, reasoning that "the factual allegations in the complaint [ ] demonstrate that plaintiffs were not paid the minimum hourly wage because they were required to pay various pre-employment expenses . . . . " *Id.* at 3.

The United States District Court for the District of South Carolina has likewise held in *Moodie v. Kiawah Island Inn Co., LLC*, 124 F. Supp. 3d 711, 717-720 (D.S.C. 2015) "that costs of inbound travel and visas for H–2B workers are 'primarily for the benefit of the employer,' " such that "they must be reimbursed to the extent that they cause wages to drop below the minimum wage." The South Carolina Court specifically observed that the *Castellanos–Contreras* case, relied upon by Defendants *supra*, was "[t]he one notable exception" to this rule, and denied the Defendant's motion to dismiss Plaintiffs' FLSA claims as to their travel expenses. *Id.* at 719 n. 5, 720. *See also Garcia v. Frog Island Seafood, Inc.*, 644 F. Supp. 2d 696, 705–07 (E.D.N.C. 2009) ("find[ing] th[at] transportation costs incurred by Plaintiffs operated as *de facto* deductions and that Defendants are liable to the extent these deductions drove Plaintiffs' first week's wages below the statutory minimum.). For these reasons, Defendant's Motion to Dismiss the Second Amended Complaint (ECF No. 27) is DENIED as to Plaintiffs' travel expenses from their homes in Mexico to the United States.

VI.    Plaintiffs Have Adequately Alleged Breach of Contract

Outside Unlimited objects that Plaintiffs' breach of contract claims are "without merit." Mem. Supp. Mot., p. 14, ECF No. 27-1. Defendant first contends that it "has not breached any contract" to pay the 2013 supplemental prevailing wage rates because its appeal of that rate increase "remains pending." Although Defendant's liability to pay the

20

2013 increased prevailing wage may ultimately depend on the outcome of that appeal, that alone does not warrant dismissal of Plaintiffs' claims.  As the United States District Court for the Southern District of New York made clear in the case of *Soler v. G & U, Inc.*, 477 F. Supp. 102, 104-105 (S.D.N.Y. 1979), discussed *supra*, even where liability in an action ultimately depends on an administrative determination as to a "focal issue," a court may stay proceedings rather than dismiss Plaintiffs' claims entirely.  Additionally, Plaintiffs have not only alleged breach of contract as to Outside Unlimited's alleged failure to pay the 2013 supplemental prevailing wage (Count V), but have also alleged, *inter alia*, breach of contract as to Defendant's failure to pay overtime wages and failure to pay Plaintiffs for work as "drivers" and "first line supervisors" (Count IV).  Second Am. Compl., ¶ 50, ECF No. 24.

Outside Unlimited next argues that "Plaintiffs and Defendants never formed a contract as a matter of law" when they entered in to their employment agreements, due to "lack of consideration" as to their obligations to comply with H-2B regulations and the terms of their H-2B certifications.  Mem. Supp. Mot., p. 14, ECF No. 27-1.  Outside Unlimited argues that because it "was already bound to comply with the law," its promise to continue complying with Department of Labor H-2B regulations could not amount to a contract with Plaintiffs.  *Id.* at 14-15. Although no Maryland court has yet considered this issue, the United States District Court for the District of South Carolina has recently rejected Outside Unlimited's specific argument in the case of *Moodie v. Kiawah Island Inn Co., LLC*, 124 F. Supp. 3d 711, 727 (D.S.C. 2015).  The Court reasoned as follows:

> Here, Defendant is not under any ***prior*** obligation to pay Plaintiffs anything and, thus, not "already legally bound" to pay Plaintiffs the prevailing wage. Instead, the H–2B regulations set the minimum consideration that Defendant must offer for this specific type of employment contract. It is a contingent

legal obligation, dependant on Defendant entering into employment contracts with H–2B workers. This obligation arose with the contract, and under the authority above, became a term of the contract.

To accept Defendant's argument is to hold that all employment contracts to pay a worker minimum wage for a particular service, lack consideration and are, therefore, not contracts. This is clearly not true. For example, suppose a company offers to pay an individual $7.25 an hour for janitorial services, and the individual accepts. A unilateral employment contract is formed. *See Small v. Springs Indus., Inc.,* 292 S.C. 481, 357 S.E.2d 452, 454 (1987). The employer has offered consideration in return for the individual's services, namely the payment of $7.25 an hour. This payment of $7.25 an hour does not lose its status as consideration because the FLSA sets a minimum wage of $7.25. That is because the employer is under no obligation to pay the individual anything **prior** to entering the contract. The same is true here with the H–2B prevailing wage.

*Moodie v. Kiawah Island Inn Co., LLC*, 124 F. Supp. 3d 711, 727 (D.S.C. 2015).  For these reasons, Outside Unlimited's Motion to Dismiss the Second Amended Complaint (ECF No. 27) is DENIED as to Plaintiffs' breach of contract claims in Counts IV and V.

VII.   Plaintiffs Have Adequately Alleged Violations of the Maryland Wage and Hour Law and the Maryland Wage Payment and Collection Law

Because "Plaintiffs were paid $11.00 and $15.00 per hour straight time and $16.50 to $22.50 per hour for overtime," rates that "exceed the rate mandated by Md. Labor Code §§ 3-413 and 3-415," Outside Unlimited contends that Plaintiffs' claims under the Maryland Wage and Hour Law and the Maryland Wage Payment and Collection Law are without merit.  Mem. Sup. Mot., p. 15, ECF No. 27-1.  However, as discussed extensively above, Plaintiffs have not simply alleged that their base pay rate fell below the Maryland minimum, but have adequately set out claims that Outside Unlimited *failed to pay Plaintiffs and class members for all hours worked* and *took improper deductions* from their wages, which *in effect* brought their actual wages well below the Maryland minimum.  For this reason, they have stated

claims for violations of the Maryland Wage and Hour Law and the Maryland Wage Payment and Collection Law.  Accordingly, Outside Unlimited's Motion to Dismiss the Second Amended Complaint (ECF No. 27) is also DENIED as to Plaintiffs' claims under the Maryland Wage and Hour Law and the Maryland Wage Payment and Collection Law.

CONCLUSION

For these reasons, Outside Unlimited's Motion to Dismiss the Second Amended Complaint (ECF No. 27) is DENIED.  Although Plaintiffs allege, *inter alia*, violations of Department of Labor H-2B regulations by Outside Unlimited, this action is properly before this Court on Plaintiffs' Fair Labor Standards Act claims, and Plaintiffs were not required to exhaust Department of Labor administrative remedies prior to filing suit.  To the extent that certain Department of Labor H-2B visa regulations are currently under review in related proceedings, a stay of this action or severance of claims may be appropriate if those related proceedings are not resolved prior to trial in this case.  However, this Court will defer ruling on that issue, as the parties have not fully briefed their positions.

A separate Order follows.

Dated:            September 7, 2017

                                            _____/s/_____
                                            Richard D. Bennett
                                            United States District Judge